**SKAPIK LAW GROUP**
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff EDWIN CRUZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN CRUZ, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. 42 U.S.C. § 1983 (Fourth Amendment - Excessive Force) |
| CITY OF TUSTIN; OFFICER ERIC KENT, an individual; OFFICER MICHAEL FITZPATRICK, an individual; SERGEANT DONALD HOULE, an individual; and DOES 1 through 10, inclusive, | 2. 42 U.S.C. § 1983 (Fourth Amendment - Failure to Intercede)<br>3. 42 U.S.C. § 1983 (*Monell* Liability – Unconstitutional Policy, Practice, or Procedure)<br>4. 42 U.S.C. § 1983 (*Monell* Liability – Failure to Train)<br>5. 42 U.S.C. § 1983 (*Monell* Liability – Ratification)<br>6. Assault<br>7. Battery<br>8. Negligence<br>9. Intentional Infliction of Emotional Distress |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

1. Plaintiff EDWIN CRUZ for his complaint against Defendants CITY OF TUSTIN, OFFICER ERIC KENT, OFFICER MICHAEL FITZPATRICK SERGEANT DONALD HOULE, and DOES 1-10, inclusive, alleges as follows:

## INTRODUCTION

2. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with the arrest and use of force by members of the Tustin Police Department against PLAINTIFF. The Tustin Police Department is owned and operated by Defendant CITY OF TUSTIN.

## PARTIES

3. At all relevant times, EDWIN CRUZ ("PLAINTIFF") was an individual residing in the County of Orange, California.

4. At all times relevant, Defendant OFFICER ERIC KENT ("KENT") is and was a police officer at the City of Tustin Police Department, which is owned and operated by Defendant CITY OF TUSTIN. At all times relevant, KENT was acting under color of state law and was an agent and/or employee of Defendant CITY OF TUSTIN. KENT is a K-9 officer whose police dog is named "ROKY".

5. At all times relevant, Defendant OFFICER MICHAEL FITZPATRICK ("FITZPATRICK") is and was a police officer at the City of Tustin Police Department, which is owned and operated by Defendant CITY OF TUSTIN. At all times relevant, FITZPATRICK was acting under color of state law and was an agent and/or employee of Defendant CITY OF TUSTIN.

6. At all times relevant, Defendant SERGEANT DONALD HOULE ("HOULE") is and was a police officer at the City of Tustin Police Department, which is owned and operated by Defendant CITY OF TUSTIN. At all times relevant, HOULSE was acting under color of state law and was an agent and/or employee of Defendant

CITY OF TUSTIN. Defendants KENT, FITZPATRICK, and HOULE are hereinafter referred to collectively as the "OFFICER DEFENDANTS".

7.    At all times relevant, Defendant CITY OF TUSTIN ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all relevant times, CITY was the employer of the OFFICER DEFENDANTS and DOES 1-10, who were various CITY police officers; supervisorial officers; and/or managerial, supervisorial, and policymaking employees of the CITY'S police department. On information and belief, at all times relevant, the OFFICER DEFENDANTS and DOES 1-10, inclusive, were residents of the County of Orange, California. The OFFICER DEFENDANTS and DOES 1-10 are sued in their individual capacity for damages only.

8.    At all times relevant, the OFFICER DEFENDANTS and DOES 1-10, inclusive, were duly authorized employees and agents of CITY, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant CITY.

9.    At all relevant times, the OFFICER DEFENDANTS and DOES 1-10, inclusive, were duly appointed police officers and/or employees or agents of the CITY, subject to oversight and supervision by the CITY'S elected and non-elected officials.

10.    In doing the acts and failing and omitting to act as hereinafter described, the OFFICER DEFENDANTS and DOES 1-10, inclusive, were acting on the implied and actual permission and consent of the CITY.

11.    At all times mentioned herein, each and every CITY defendant was the agent of each and every other CITY defendant, and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every CITY defendant.

12.    The true names of defendants DOES 1-10, inclusive, are unknown to PLAINTIFF, who therefore sues these defendants by such fictitious names. PLAINTIFF will seek leave to amend this complaint to show the true names and capacities of these

defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

13.    This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrence giving rise to this action occurred in the County of Orange, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

15.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 14 of this complaint with the same force and effect as though fully set forth herein.

16.    On or about June 5, 2024, at about 7:00 p.m., Plaintiff was involved in a police contact with members of the Tustin Police Department, including, but not limited to, the OFFICER DEFENDANTS.

17.    Plaintiff was driving a white U-Haul van. On the date in question, the OFFICER DEFENDANTS and DOES 1-10, inclusive, attempted to initiate a stop on Plaintiff. Plaintiff was fearful and did not immediately stop when the OFFICER DEFENDANTS and DOES 1-10, inclusive, attempted to conduct the stop. After some time, Plaintiff exited the vehicle on 17th Street in Santa Ana and boarded an electric scooter and continued to move away from the vehicle and the OFFICER DEFENDANTS.

18.    Due to Plaintiff failing to stop, KENT released ROKY to chase after Plaintiff. On information and belief, ROKY was released without a leash and KENT soon lost sight and control of ROKY. The OFFICER DEFENDANTS followed Plaintiff and ROKY from their patrol vehicles.

19.    ROKY continued to bite at Plaintiff's pant leg while he was on the scooter in the middle of the road. Plaintiff abandoned the scooter and moved the sidewalk, while ROKY was biting at Plaintiff's pant leg.

20.    The OFFICER DEFENDANTS exited their vehicles and approached Plaintiff with guns drawn as he and ROKY moved to the sidewalk. The OFFICER DEFENDANTS gave Plaintiff commands, which he attempted to follow. However, ROKY continued to bite at Plaintiff's pant leg, despite the fact that Plaintiff had stopped running and was attempting to comply with the OFFICER DEFENDANTS.

21.    At that point, HOULE and FITZPATRICK approached Plaintiff and ROKY. Plaintiff surrendered, laid down on the ground, and placed his hands on his back. HOULE and FITZPATRICK immediately, and without any justification, used control holds on Plaintiff in order to inflict extra pain on him while placing him in handcuffs.

22.    While HOULE and FITZPATRICK were placing Plaintiff in handcuffs, ROKY continued to bite at Plaintiff's pant leg. ROKY then bit Plaintiff on his left calf, breaking through skin and tendons and causing injury. When ROKY bit Plaintiff, he was laying on the ground with his hands behind his back and with HOULE and FITZPATRICK applying their full bodyweight onto him. When ROKY bit Plaintiff, he was actively surrendering and not resisting in any way. KENT was not nearby when ROKY bit Plaintiff, and instead was lagging behind. None of the OFFICER DEFENDANTS gave ROKY any commands to release the bite on Plaintiff while he was being handcuffed, despite Plaintiff's repeated cries for help.

23.    Despite Plaintiff's obvious pain and suffering, and there being no reason to allow ROKY to continue to bite him, none of the OFFICER DEFENDANTS intervened in the obvious and unconstitutional use of force against Plaintiff by KENT via ROKY. Instead, ROKY was allowed to continue to bite Plaintiff's left leg for over a minute, all while Plaintiff was in handcuffs and not actively resisting any of the OFFICER DEFENDANTS.

24.     Plaintiff was arrested and taken to jail, where the injuries he suffered from ROKY became infected, causing even more serious pain and suffering.

25.     As a result of the unconstitutional force used by KENT via ROKY, Plaintiff suffered serious injuries to his lower left leg, which required sutures in order to close. Plaintiff required crutches and a cane in order to ambulate for months after he was bit by ROKY. Plaintiff has and still requires significant physical therapy in order to one day be able to walk normally again.

26.     Plaintiff further suffered pain, suffering, and emotional distress at the hands of the OFFICER DEFENDANTS due to their use of excessive and unreasonable force.

# I.

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF against the OFFICER DEFENDANTS and DOES 1-10, inclusive)

27.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 26 of this Complaint with the same force and effect as if fully set forth herein.

28.     The unjustified use of force against Plaintiff by the OFFICER DEFENDANTS and DOES 1-10, inclusive, deprived Plaintiff of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

29.     The unreasonable use of force by the OFFICER DEFENDANTS and DOES 1-10, inclusive, deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

30.     Specifically, Defendant KENT used unreasonable and excessive force against Plaintiff when released the K-9 unit "ROKY" and allowed ROKY to continuously bite Plaintiff for over a minute, causing serious injuries, despite the fact that Plaintiff was

not actively resisting and was not a threat to the OFFICER DEFENDANTS, himself, or any other person.

31.    Specifically, Defendant FITZPATRICK used unreasonable and excessive force against Plaintiff when he used pain compliance techniques and positional asphyxiation techniques against Plaintiff despite the fact that Plaintiff was not actively resisting and was not a threat to the OFFICER DEFENDANTS, himself, or any other person.

32.    Specifically, Defendant HOULE used unreasonable and excessive force against Plaintiff when he used pain compliance techniques and positional asphyxiation techniques against Plaintiff despite the fact that Plaintiff was not actively resisting and was not a threat to the OFFICER DEFENDANTS, himself, or any other person.

33.    As a result, Plaintiff suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

34.    As a result of the conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, they are liable for Plaintiff's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

35.    This use of excessive force was unreasonable under the circumstances, especially since it should have been obvious that no one was in any danger from Plaintiff when he was actively surrendering before any force was used against him. In fact, Plaintiff was all alone and a threat to no other person. Defendants' actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

36.    The conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to the OFFICER DEFENDANTS and DOES 1-10, inclusive.

37.    Plaintiff also seeks attorney fees under this claim.

## II.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure – Failure to Intervene

(By PLAINTIFF against the OFFICER DEFENDANTS and DOES 1-10, inclusive)

38.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth herein.

39.     The unjustified use of force against Plaintiff by the OFFICER DEFENDANTS and DOES 1-10, inclusive, deprived Plaintiff of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

40.     The unreasonable use of force by the OFFICER DEFENDANTS and DOES 1-10, inclusive, deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.     Furthermore, the OFFICER DEFENDANTS and DOES 1-10, inclusive, each had a duty to intervene in unconstitutional uses of excessive force against Plaintiff, and each of them failed to do so.

42.     Specifically, KENT failed to intervene in the unconstitutional, unreasonable, and excessive force used against Plaintiff by FITZPATRICK, HOULE, and DOES 1-10, inclusive, despite knowing such force was excessive and having a reasonable opportunity to do so. Moreover, KENT failed to intervene in the prolonged and punitive bite by ROXY, his own K-9 unit.

43.     Specifically, FITZPATRICK failed to intervene in the unconstitutional, unreasonable, and excessive force used against Plaintiff by KENT, HOULE, and DOES 1-10, inclusive, despite knowing such force was excessive and having a reasonable opportunity to do so.

44.    Specifically, HOULE failed to intervene in the unconstitutional, unreasonable, and excessive force used against Plaintiff by KENT, FITZPATRICK, and DOES 1-10, inclusive, despite knowing such force was excessive and having a reasonable opportunity to do so.

45.    As a result, Plaintiff suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

46.    As a result of the conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, they are liable for Plaintiff's injuries because they failed to intervene in each of the other defendants unconstitutional acts.

47.    The use of excessive and potentially deadly force by the OFFICER DEFENDANTS and DOES 1-10, inclusive, was unreasonable under the circumstances, especially since it should have been obvious that no one was in any danger from Plaintiff when he was actively surrendering prior to any force being used against him. Defendants' actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

48.    The conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages against the OFFICER DEFENDANTS and DOES 1-10, inclusive.

49.    Plaintiff also seeks attorney fees under this claim.

## III.

## THIRD CLAIM FOR RELIEF

### *Monell* Liability – Unconstitutional Custom, Practice, or Policy

(By PLAINTIFF against CITY OF TUSTIN)

50.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 49 of this complaint with the same force and affect as though fully set forth herein.

51.    At all relevant times, the OFFICER DEFENDANTS and DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

52.    The acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, as described above, deprived Plaintiff of his particular rights under the United States Constitution. Specifically, the force used by the OFFICER DEFENDANTS and DOES 1-10, inclusive, was excessive under the circumstances and violated Plaintiff's Fourth Amendment right to be secure in his persons and free from government violence.

53.    On information and belief, Defendant CITY's police department has a longstanding practice of escalation during police contacts with citizens.

54.    On information and belief, Defendant CITY uses improperly trained police K-9 units, including ROKY, that are not properly equipped or trained to engage in constitutional contacts with citizens, including Plaintiff. On information and belief, the CITY knows that its K-9 dogs will not properly respond to commands from their handlers and are trained to cause maximum harm to suspects rather than

55.    On information and belief, Plaintiff alleges that this practice is rampant and pervasive throughout CITY's police department and that it is generally accepted to be the custom of the CITY's officers to use excessive and unconstitutional force to make arrests.

56.    PLAINTIFF is informed and believes and thereon alleges that the CITY is aware that its officers have a custom and practice to use excessive force and improperly engage K-9 units when executing arrests and has defended multiple lawsuits related to this pervasive policy, custom, or practice. As such, in the event that the CITY has not "expressly adopted" such a policy, it is clear that the CITY is aware of the practice and custom of its officers to use excessive and unreasonable force with impunity, and specifically allowing them to use K-9 units to inflict excessive and punitive harm on arrestees.

57.     Specifically, the OFFICER DEFENDANTS and DOES 1-10, inclusive,, acted pursuant to an expressly adopted official policy(s) and/or a longstanding practice(s) or custom(s) of Defendant CITY by:

     a. Employing and retaining officers such as the OFFICER DEFENDANTS and DOES 1-10, inclusive, who the CITY at all times relevant knew or should have known either had dangerous propensities for abusing their authority and for using excessive force, were not willing and equipped to properly intervene to prevent the use of excessive force, or were not willing to report other officers' use of excessive force thereafter.

     b. Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, the OFFICER DEFENDANTS and DOES 1-10, inclusive, who the CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

     c. Inadequately training, supervising, controlling, and retaining police K-9 units such as ROKY, who were not adequately trained to respect constitutional rights and who the CITY knew or should have known had a tendency to inflict unconstitutional and punitive harm on individuals during arrests.

58.     PLAINTIFF is informed and believes that CITY has not disciplined those officers who engage in this unconstitutional policy, custom, or practice to use excessive force in making arrests, including the OFFICER DEFENDANTS and DOES 1-10, inclusive.

59.     The CITY's police department's policy, custom, or practice of using excessive force in making arrests was the cause in fact of the deprivation of PLAINTIFF's civil rights when he was subjected to a per se constitutional violation due to the overlong use of ROKY against him by the OFFICER DEFENDANTS and DOES 1-10, inclusive. PLAINTIFF had surrendered and was not resisting when ROKY bit and held onto his ankle for over a minute, causing serious harm. The OFFICER

DEFENDANTS and DOES 1-10, inclusive, did not try to remove ROKY and, once they did, had difficulty removing ROKY from PLAINTIFF's leg because ROKY was inadequately trained.

60.    The OFFICER DEFENDANTS and DOES 1-10, inclusive, employees and agents of Defendant CITY, operated under color of law when they intentionally, willfully, and wantonly deprived PLAINTIFF of his constitutional rights.

61.    As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

62.    Accordingly, the CITY is liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

## IV.

## FOURTH CAUSE OF ACTION

### *Monell* Liability – Failure to Train

(By PLAINTIFF against CITY OF TUSTIN)

63.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 62 of this complaint with the same force and effect as though fully set forth herein.

64.    At all relevant times, the OFFICER DEFENDANTS and DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

65.    The training policies of the CITY were not adequate to train their officers to handle the usual and recurring situations with which they must regularly deal. This includes training with respect to tactics, the use of force, de-escalation techniques, and controlling officer emotions and fears (including inadequate "warrior training" that imbues officers with inadequate fears about every situation and encourages excessive and unreasonable force and overreacting to a situation). In addition to failing to train officers to safely handle obvious, recurring situations like the incident with PLAINTIFF, the

COMPLAINT

CITY affirmatively chose a policy it knew was likely to lead to, and in fact had previously lead to, deprivations of constitutional rights, including violations of the Fourth Amendment.

66.    The acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution. Specifically, the force used by the OFFICER DEFENDANTS and DOES 3-10, inclusive, was excessive under the circumstances and violated PLAINTIFF's Fourth Amendment right to be secure in his persons and free from government violence.

67.    On information and belief, the CITY failed to properly and adequately train the OFFICER DEFENDANTS and DOES 1-10, inclusive, with regard to use of force generally. The training polices of the CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. As a result of this deficient policy and deficient training, the OFFICER DEFENDANTS and DOES 1-10, inclusive, used ROKY in a way that violated PLAINTIFF's constitutional rights by allowing him to remain on PLAINTIFF's leg for over a minute despite the fact that PLAINTIFF was not resisting and had surrendered.

68.    Defendants CITY's failure to train its officers is evidenced by a lack of training, standards, and policies concerning situations that officers must be prepared to encounter, including the instant matter.

69.    The OFFICER DEFENDANTS and DOES 1-10, inclusive, are supposed to be trained on de-escalation techniques designed to increase officer and public safety by reducing officer use of force. De-escalation assists in creating a trusting environment for the subject making the subject more likely to comply.

70.    The OFFICER DEFENDANTS and DOES 1-10, inclusive, failed to de-escalate the situation involving PLAINTIFF and instead escalated the situation when they allowed ROKY to continue to bite PLAINTIFF's leg for over a minute while he was being handcuffed and not resisting. PLAINTIFF had surrendered at this point and was

completely responsive to the OFFICER DEFENDANTS, who still failed to remove ROKY from his bite in order to further punish PLAINTIFF.

71.    Defendant CITY was deliberately indifferent to the obvious consequences of its failure to adequately train the CITY'S police officers, including training with respect to tactics, use of force, de-escalation techniques, and proper use of K-9 units.

72.    Defendant CITY was deliberately indifferent to the consequences of failing to properly train their officers, including the OFFICER DEFENDANTS and DOES 1-10, inclusive, in the above-enumerated methods and procedures. By failing to properly train their officers, including the OFFICER DEFENDANTS and DOES 1-10, inclusive, Defendant CITY allowed the officers to rely on improper warrior training, escalation of force, and improper tactics. These improper trainings and tactics are dangerous to the officers and to the public at large and increase the risk of excessive force.

73.    Defendant CITY knew or should have known that their training policies and procedures as to use of force, tactics, and de-escalation were insufficient and would likely lead to constitutional violations. Despite this knowledge, Defendant CITY took no steps to correct the inadequate training and allowed its officers to develop habits of escalating encounters and using excessive force on civilians. Defendant's continued adherence to an approach it knew or should have known failed to prevent excessive force by their officers shows their conscious disregard for the consequences of their failure to adequately train its officers.

74.    The failure of Defendant CITY to provide adequate training caused the deprivation of PLAINTIFF's rights by the OFFICER DEFENDANTS and DOES 1-10, inclusive; that is, Defendant's failure to train is so closely related to the deprivation of PLAINTIFF's civil rights as to be the moving force that ultimately caused PLAINTIFF's injuries.

75.    On information and belief, Defendants CITY failed to train the CITY's officers properly and adequately, including training with respect to tactics and the use of force, including potentially deadly force, and de-escalation techniques.

76.     Defendant CITY's failure to train includes not having training for its officers to handle the usual and recurring situations with which they must deal; not providing adequate time and resources for officers to train when the training does exist, so that officers can rely on that training; not enforcing the basic training standards, when they do exist, that are designed to prevent officers from using excessive and unreasonable force; not adequately providing recurring training so that officers do not lose necessary perishable skills; and not re-training officers who have used force in the field.

77.     Further evidence of Defendant CITY's failure to train is shown by their officers not following their basic training standards and department written policies and receiving no discipline or counseling when they violate written policies concerning the use of force. On information and belief, the CITY's officer training regarding use of force is based on the Peace Officer Standards and Training ("POST"). This training begins in the academy, and should have been reinforced and upheld by further training by the CITY, including, but not limited to, the following:

a. An officer must recognize that they only have the authority to use reasonable force to effect a lawful arrest, to prevent escape, or to overcome unlawful resistance.

b. Knowing that community members want officers to possess the skills necessary to subdue subjects by applying only the amount of force reasonable to effect an arrest, prevent escape, or to overcome resistance.

c. A officer must recognize that they have a range of force options available to them, including the option to use no force at all.

d. It has been established that officers, when required to respond in dangerous situations, will revert to the responses they learned in training. Officers' tactical performance may depend entirely on how well and effectively they have trained and practiced required skills and abilities.

e. Since many use of force skills are perishable, without ongoing practice and training, officers place others in jeopardy.

f.  Effective communication enables an officer to gain cooperation and voluntary compliance in stressful situations.

g.  Effective communication is a basic element of any use of force. A major goal of law enforcement is and should be to gain voluntary compliance without resorting to physical force.

h.  The desired degree of physical control for officers comes from proper training and continual practice. Without proper, adequate, and continual training, an officer's physical skills deteriorate.

i.  Self-control is one of an officer's greatest assets in dealing with a person or situation.

j.  Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of experience.

k.  Unreasonable fear can be responsible for inappropriate responses, such as failing to respond at all or by responding using unreasonable force on a subject.

l.  Unreasonable force occurs when the type, degree, and duration of force applied was neither necessary nor appropriate.

m.  The community expects that its police officers will use only reasonable amounts of force. Likewise, it expects that someone, including police officers, will intervene if reasonable force is exceeded.

78.  The CITY has not reinforced any of these POST standards in its officers, including the OFFICER DEFENDANTS and DOES 1-10, inclusive. The CITY has allowed the training that officers receive at the academy to lapse, and instead allows them to rely on uninformed instinct, without any basis in proper police procedures, tactics, or policies.

79.  This incident is representative of the typical conduct of the CITY's police officers, who were not adequately prepared and not trained to deal with persons with

clear mental health issues. This failure to train is the causal connection between the actions of the OFFICER DEFENDANTS and DOES 1-10, inclusive, and PLAINTIFF's injuries.

80.    On information and belief, the CITY failed to properly train its officers regarding the use of force as it relates to K-9 units. As a result of this deficient policy and deficient training, the OFFICER DEFENDANTS and DOES 1-10, inclusive, subjected PLAINTIFF to unreasonable and excessive force by way of ROKY.

81.    The training polices of Defendant CITY are and were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including de-escalation techniques, K-9 units, tactical communication, tactical positioning, and the use of less-than-lethal force.

82.    Defendant CITY was deliberately indifferent to the obvious consequences of failing to adequately train its police officers.

83.    The failure of Defendant CITY to provide adequate training caused the deprivation of PLAINTIFF's rights by the OFFICER DEFENDANTS and DOES 1-10, inclusive; that is, Defendant's failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

84.    As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

85.    Accordingly, Defendant CITY liable to PLAINTIFF for compensatory damages pursuant to 42 U.S.C. § 1983. PLAINTIFF also seeks reasonable attorneys' fees and costs under this claim.

///

///

///

///

///

///

# V.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability- Ratification (42 U.S.C. § 1983)

(By PLAINTIFF against CITY OF TUSTIN)

86.    PLAINTIFF repeats and realleges each and every allegation in paragraphs 1 through 85 of this complaint with the same force and effect as though fully set for the herein.

87.    At all relevant times, the OFFICER DEFENDANTS and DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

88.    The acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, as described herein, deprived PLAINTIFF of his particular rights under the United States Constitution.

89.    Upon information and belief, the final policymaker for the CITY,  acting under color of law, who had final policymaking authority concerning the acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, and the bases for them, ratified the acts and omissions of the OFFICER DEFENDANTS and DOES 3-10, inclusive, and the bases for them. Upon information and belief, this final policymaker knew of and specifically approved of the OFFICER DEFENDANTS' and DOES 1-10's, inclusive, unlawful use of force against PLAINTIFF.

90.    Upon information and belief, this final policymaker has determined that the acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, were "within policy."

91.    By reason of the aforementioned acts and omissions, the CITY is liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. PLAINTIFF also seeks reasonable attorneys' fees and costs under this claim.

///

///

///

# VI.

## SIXTH CLAIM FOR RELIEF

### Assault

#### (By PLAINTIFF against All Defendants)

92.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 91 of this complaint with the same force and affect as though fully set forth herein.

93.    On June 5, 2024 the OFFICER DEFENDANTS and DOES 1-10, inclusive, threatened to cause harmful contact with PLAINTIFF by way of siccing ROKY on him without any way of controlling ROKY.

94.    PLAINTIFF did not consent to the conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive.

95.    The conduct of the OFFICER DEFENDANTS and DOES 1-8, inclusive, was a substantial factor in causing PLAINTIFF's harm.

96.    The conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, was intentional, despicable, malicious, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF's rights.

97.    The CITY is vicariously liable for the acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, pursuant to California *Government Code* section 815.2(a), which provides that a public entity is liable for the injuries proximately caused by an act or omission of an employee of the public entity within the scope of their employment if the act or omission would have given rise to a cause of action against that employee.

///

///

///

///

///

///

# VII.

## SEVENTH CAUSE OF ACTION

### Battery

(By PLAINTIFF against All Defendants)

98.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 97 of this complaint with the same force and effect as though fully set forth herein.

99.    The OFFICER DEFENDANTS and DOES 1-10, while working as police officers for the CITY's police department, and acting within the course and scope of their duties, intentionally battered PLAINTIFF when they caused ROKY to bite PLAINTIFF and continue to bite PLAINTIFF for over a minute, causing serious injury, despite the fact that PLAINTIFF had surrendered and was not actively resisting the OFFICER DEFENDANTS and DOES 1-10, inclusive. As a result of the actions of the OFFICER DEFENDANTS and DOES 1-10, inclusive, PLAINTIFF suffered severe physical, mental, and emotional pain and suffering, including serious nerve damage to PLAINTIFF's leg.

100.   As a direct and proximate result of defendants' conduct as alleged above, PLAINTIFF suffered extreme and severe mental anguish and pain and has been injured in mind and body. PLAINTIFF has suffered significant injuries, including a serious nerve damage as a result of the conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive.

101.   The CITY is vicariously liable for the wrongful acts of the OFFICER DEFENDANTS and DOES 1-10, inclusive, pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

102.   The conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the

rights of PLAINTIFF, entitling PLAINTIFF to an award of exemplary and punitive damages.

## VIII.

## **EIGHTH CLAIM FOR RELIEF**

### **Negligence**

(By PLAINTIFF against All Defendants)

103.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 102 of this complaint with the same force and effect as though fully set forth herein.

104.    The actions and inactions of the defendants were negligent and reckless, including, but not limited to:

      a.  The negligent tactics and handling of the situation with PLAINTIFF;

      b.  The negligent use of force against PLAINTIFF.;

      c.  The failure of the CITY to properly train and supervise employees, both professional and non-professional, including the OFFICER DEFENDANTS and DOES 1-10;

105.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, PLAINTIFF was caused to suffer severe pain and suffering. Also, as a direct and proximate result of defendants' conduct as alleged above, PLAINTIFF suffered extreme and severe mental anguish and pain and has been injured in mind and body.

106.    CITY is vicariously liable for the wrongful acts of the OFFICER DEFENDANTS and DOES 1-10 pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

///

///

# IX.

## NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By PLAINTIFF against all Defendants)

107.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 106 of this complaint with the same force and effect as though fully set forth herein.

108.   On June 5, 2024, the OFFICER DEFENDANTS and DOES 1-10, inclusive, used excessive and unreasonable force against PLAINTIFF when they caused ROKY to bite PLAINTIFF and continue biting PLAINTIFF after PLAINTIFF had surrendered and was not actively resisting.

109.   To punish PLAINTIFF, the OFFICER DEFENDANTS and DOES 1-10, inclusive, allowed ROKY to continue to bite PLAINTIFF for over a minute, causing serious and potentially permanent injury.

110.   The OFFICER DEFENDANTS and DOES 1-10, inclusive, acted in an outrageous way by their unjustified and unreasonable use of excessive force against PLAINTIFF.

111.   The OFFICER DEFENDANTS and DOES 1-10, inclusive, acted intentionally and with reckless disregard that PLAINTIFF would suffer emotional stress and distress from such an outrageous and excessive use of force on his person.

112.   The OFFICER DEFENDANTS and DOES 1-10, inclusive, acted intentionally and with reckless disregard that PLAINTIFF would suffer severe emotional stress and distress from being wrongfully detained without reasonable suspicion, wrongfully arrested without probable cause, and subject to extreme and excessive force at the hands of the officers.

113.   As an actual and proximate result of the conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, PLAINTIFF suffered and continues to suffer from severe emotional distress to this day.

114.    The conduct of the OFFICER DEFENDANTS and DOES 1-10, inclusive, was intentional, despicable, malicious, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF's rights.

115.    The CITY is vicariously liable for the acts and omissions of the OFFICER DEFENDANTS and DOES 1-10, inclusive, pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for the injuries proximately caused by an act or omission of an employee of the public entity within the scope of their employment if that act or omission would have given rise to a cause of action against that employee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests an entry of judgment in his favor and against Defendants CITY OF TUSTIN, OFFICER ERIC KENT, OFFICER MICHAEL FITZPATRICK, SERGEANT DONALD HOULE and DOES 1-10, inclusive, as follows:

A. For Compensatory damages in the amount to be proven at trial;

B. For punitive damages against KENT, FITZPATRICK, HOULE, and DOES 1-10, inclusive, in an amount to be proven at trial;

C. For interest;

D. For reasonable costs of this suit and attorneys' fees; and

E. For such other further relief as the Court may deem just, proper, and appropriate.

SKAPIK LAW GROUP

Dated: August 6, 2025          By:    */s/ Matthew T. Falkenstein*
                                      Mark J. Skapik
                                      Geralyn L. Skapik
                                      Blair J. Berkley
                                      Matthew T. Falkenstein
                                      Attorneys for Plaintiff
                                      EDWIN CRUZ

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.


                                          SKAPIK LAW GROUP



Dated: August 6, 2025                     By:    */s/ Matthew T. Falkenstein*
                                                 Mark J. Skapik
                                                 Geralyn L. Skapik
                                                 Blair J. Berkley
                                                 Matthew T. Falkenstein
                                                 Attorneys for Plaintiff
                                                 EDWIN CRUZ

COMPLAINT